Clerk, please call the next case. 2-11-1021. May it please the Court. Counsel. Mike Baggett on behalf of the movement, Closs Distributing. We filed multiple issues in our brief, including accident, TTD, and medical, and whether or not penalties were award penalties. If you consider the whole situation and the circumstances of this case, you have a petitioner who claims injury. Was the entire basis upon which the claim was denied the video? No, it wasn't. And that's really one of the issues that wasn't addressed in – we had the video. We had an investigation done by Mr. Lula, who talked to independent witnesses. And that didn't come into evidence? Correct. It did not come into evidence. That was – that was objected to and kept out as Exhibit 1 and Exhibit No. 2. You also have the investigation that was done by Mr. Newman regarding the facts of the circumstances. So the video is one aspect of things. I mean, look at the video. It will show you that the – But now Mr. Newman's investigation was based on the video. Right. And his conversations with other employees who – some of which also talked to Mr. Lula, who was the investigator who did the majority of the investigation. So if you look at the video itself, there is some discrepancy regarding the testimony of the petitioner and what the video shows us for somebody who allegedly has a back injury. First and foremost, the video – there's been a big hang-up or a big notice of the fact that this is a motion-active surveillance, a closed-caption video that conducts surveillance of the area in which the petitioner allegedly injured his back. He claims he injured his back lifting a keg or a – An oddball cooler? Oddball cooler. Correct. That's where it happened at. That's called the oddball cooler. Interesting term. Yes. It's been an oddball case, to say the least. So – but there's been some reliance on the fact that there's no – that this is a motion-active closed-caption surveillance. So it's not intended – and you admit it – it's not intended to record all of the movements of the claimant every second, is it? Only things that are movement. I mean, there has to be something triggering the closed-caption. Now, if the person's standing there, it may go off. But now, what he claims – Petitioner claims he was lifting a keg or lifting a barrel. It was a barrel, I believe, that he was lifting when the accident happened. He's clearly doing some type of movement that would trigger the closed-caption surveillance to click on and to see the activity. That – we reviewed the closed-caption, and there's no indication that there was any injury suffered by the petitioner in this accident. Okay. So let's say you in good faith believe that there's no – that the videotaped surveillance would tend to indicate there was no accident at all. Correct. Before you terminated – decided not to – before you decided to terminate the benefits, did you have any medical opinion or medical evidence that supported that decision? Well, I'm glad you brought that up, because this wasn't a situation we were disputing that there might have been an injury or the injury – he had treatment. This denial, the reason why the case was denied, was based on accident. That was the basis of the denial, not a causation issue. We weren't – the guy had an injury. We – the dispute was it didn't happen at our – the allegations that he made didn't happen at our site. He claims that he was lifting the barrel up. He felt immediate, sharp pain, made a movement to his back. The video showed none of that. And so what else besides the video, again, did you have to show there was no accident? The – the testimony of the other people that were kept out of – that the investigation of Mr. Lulow and the investigation of Mr. Newman indicated that the petitioner told other witnesses that it took him a half hour and 45 minutes to relieve the – the premises because he was in so much pain. Again, when you go to the – to the video surveillance, you see the petitioner leaving the – the premises at 509, kicking the door open as he leaves. Again, this is contrary to the testimony that – that the witnesses' statements that were given at the time of – of the investigation. And that's the – that's the thing here. We have to look at this as far as how the employer looked at – looked at this claim. At the time this thing was being investigated, there was a lot of red flags regarding – regarding this accident. Well, he didn't say that it was – there was no, you know, broken bones, fractures. As I understand it, the claimant testified that he suffered some tightening or burning sensation in his lower back. And it got worse the next day. Does the videotape exclude that possibility? The videotape does not show somebody who was in any type of distress or any type of incident where somebody was – Well, how can you tell by a videotape? There's no – there's no hunching over, there's no reaching for the back. And the fact is, as he's leaving the circumstances, he kicks open a door. I mean, I'm not sure what else you could say about somebody who's kicking open a door. If you're suffering a back injury and allegedly felt – and this is his testimony – felt immediate pain, it was a 6 out of 7 out of 10, immediately. That kicking open a door as you're leaving the premises is not consistent with somebody who's suffering from pain. Describe what he did to kick open the door. I mean, I personally have not seen the videotape. He kicked it open as he was walking out the door. I mean, just the way you did just now. I mean, he didn't lift his foot up even with his face. He didn't go that far, no. No, I mean, this wasn't a kung fu kick. It was a – I mean, is it possible that he couldn't bend over to turn the knob, so he kicked it with his foot? I mean, without seeing it – Sure. You know, people describe things in different ways, and so – I understand. That's why I'm asking if it's that obvious. It's – it's not a movement where he's up doing a karate kick. He didn't do a Van Damme spinning – No, he didn't do anything like that. If that was the case, obviously I would hope he wouldn't be here today. But he did enough of an activity with somebody who has a 6 out of 7 pain complaint that it's just not conceivable that he injured his back. So you went all in, to be candid. The company went all in. The employer went all in on this thing. There was no accident at all. That's sort of risky, isn't it? Yes, and quite frankly, and that's one of the things as well, is that this wasn't a situation where this case dragged on and on and on. It was tried in four and a half months of the alleged accident, which is a pretty quick period of time for the workers' compensation system. So, yes, we could have gone out and got an IME. We could have got out and those other things. But it was a safer course. Well, now that's – that's not – that's not fair because we were just – we were fighting this case on accident. So if we lost accident, then the issue would have been medical and there was some kind of condition. I appreciate that. We could have dragged this out even longer, but instead of taking that route, we relied on the fact that, on a good faith basis, that the surveillance or the closed caption showed no activity which would indicate that he suffered an accident while in his employment. His actions after the alleged accident also showed that he didn't seem to have any injury as he was leaving the premises. So we could have delayed this and we could have dragged this out for months, and it was tried within four and a half months. So, again – Well, here's one of the problems you have. If you know whether or not the delay is justified, whether or not it's unreasonable or penalties are appropriate, those are questions of fact for the commission, are they not? I understand that, but you have to look at it as the employer when the denial was made. And that's what it says. If the employer has legitimate doubt as to its liability, its conduct in refusing payment is not unreasonable. So you have to look at it in the eyes of the respondent when the denial was made. And if you look at the other information that was kept out of trial, you have statements of other witnesses who, again, contradict the testimony of the petitioner and what he told other people regarding the accident. The time frame in which it took him to leave the premises, anywhere between a half hour and 45 minutes, compared to what the surveillance and closed caption video shows you, that it wasn't that long. Again, when you look at these things, you have to look at it as the employer looked at it at the time of the denial and whether or not it was a legitimate doubt. And I can't – there's a legitimate doubt here. There's no other way you can put this than there's a legitimate doubt. There was no information – there's nothing in the closed caption surveillance that shows any type of indication that he injured his back. How did he get to Condell Acute Care Center? I'm sorry? How did he get to Condell Acute Care Center? The following day, he reported to Mr. Newman and Mr. Newman referred him to Condell. Okay. And what did Condell say about this? They said that he had a back strain. Okay. But I know where you're going with this, but I'm going to stop right here because we just had a case right before this case where there were discrepancies regarding someone's history and accident and things of that nature, and those things were heard by this court. And sometimes people aren't always truthful. And when you have the objective evidence that was presented to – Your only objective evidence is that he kicked the door. No, it's also the closed caption video shows nothing had took place. It's not according to the commission or the arbitrator. The commission looked at this film. I understand that. Okay, and let's see what they had to say about it. The commission views the film, and the commission says, in the commission's view, the video does not undermine Petitioner's account of his injury. Petitioner did not claim an immediate onset of disabling back pain. Rather, he claimed that he experienced a tightness and a burning sensation in his lower back while lifting heavy barrels inside the oddball cooler at the end of the workday. These symptoms did not prevent Petitioner from being able to finish a shift or walk out to his car. It wasn't until the following morning that his lower back locked up. Again, but look at what his testimony was regarding the accident. He testified that he felt immediate different types of pain. He felt the pain was a 6 out of 7 out of 10 immediately after the accident. That is severe pain. So to really put a fine point on it, perhaps too fine a point, you're saying because it wasn't a physical, visible reaction like he keeled over, he couldn't have had a problem. That was part of it. Also looking at the totality of the investigations that were performed by Mr. Lulow and by Mr. Newman, there was also other indications that his testimony wasn't truthful regarding what took place. Specifically regarding the time frame it took him to exit the premises, he told people it took him 30 minutes to 45 minutes to exit the premises. And that was in the exhibits that were – Was this presented to the arbitrator? I'm sorry? Was this presented at trial? It was presented at trial. So presumably the commission took this into consideration, right? I don't know what the commission took into consideration. But it was presented at trial. And obviously if the commission is always right, there wouldn't be a need for appellate court. Sometimes they get it wrong. And I think when you look at the case, it says legitimate doubt. This has to be looked at by how the employer viewed it at the time this thing was denied. And what was in the knowledge of the employer at the point in time when benefits were denied? What did they know? They knew they had the closed caption video, which showed no type of incident, or at least no indication of an accident. They had Mr. Lulow, who did the investigation, who spoke with multiple witnesses, who gave a history regarding what the petitioner told them the accident as far as the time it took him to leave, 30 to 45 minutes to leave the premises, which wasn't the case. They've got the activity of the petitioner leaving the premises with kicking the door open. And they have other investigation that was done by Mr. Lulow indicating that there was a large discrepancy regarding the accident and what the petitioner testified to. They had the Condell report saying he had a strained back. They had the Condell. But, again, that doesn't necessarily, that's a medical thing. It's not an accident offense. Again, there might have been an injury there, but the issue was it didn't happen at the premises as claimed by the petitioner. Now, wouldn't that be a weird coincidence the next day he shows up seeking medical treatment and there was nothing that happened the day before? Well, he's a bodybuilder. He rides a motorcycle. He's active. Those things can all lead to injuries that have low back complaints. But the coincidence of the next day is pretty wild. Well, okay, again, let me go. We just argued a case right in front of this Court where they denied an accident date because of improper history or things of that nature. There are discrepancies regarding this accident. There's no other way you can look at this other than the fact there are discrepancies regarding what took place and how it took place regarding the closed caption video and the investigation that was performed. This isn't a circumstance where somebody sat in their office and said, deny the case. This is not the case. And, quite frankly, the fact that penalties was held is unright and unjustified for somebody who did an investigation, who put their time and effort in to make sure this was compensable, and the fact that they were held for penalties is uncautionable in this case. That means that no case can be denied. You'll have time on rebuttal, Counsel. Thank you. Counsel, please. May it please the Court, Counsel? Amy Lee Hogan Smatovich for the Defendant Appellee. I think the arbitrator in this case said it best, that Respondent is demanding a burden of proof that is unreasonable under the law. They're demanding that the Defendant appear injured on videotape, demanding that he limp or fall over or keel over and grab his back. This just isn't the burden in Illinois. They were not required to see the defendant. We see this on videotape to pay benefits in this case. The Defendant never claimed to experience disabling back pain. He felt a tightness and a warmth that gradually progressed into his back locking up the next morning. There was no sharp pain. There was no grabbing his back. He never testified to those things occurring. I would submit to you that this is often the natural progression of a back strain to gradually progress over time. As discussed by Counsel, Plaintiff relies heavily on the surveillance video. And here I think the Commission said it best when they submitted additional findings, that this video did nothing to undermine the Petitioner's testimony. This video was so disjointed. It was six minutes of video when the Plaintiff, or when the Defendant, I'm sorry, and his coworker, Mr. McKillen, both testified that they were at that warehouse for an hour. We don't have an hour of video. The Plaintiff makes claims about how long it took, you know, the Defendant to leave and what he was doing during that time. We don't have an hour of that video. We have two men both saying we were there for an hour. An hour of video was not provided to the Court. Only six minutes of video was provided to the Court. We don't know what else was done on that video. It could have showed him lifting plenty of barrels that day. But that wasn't provided to the Court. What about the interviews that were, Lulow, I believe, his interviews? Mr. Lulow did conduct interviews. Those interviews were not admitted into evidence. And what I think was important about the interviews that Mr. Lulow conducted is that Mr. Lulow did not testify that this information impacted his denial at all. Mr. Lulow argues that he testified that the claim was suspect because he didn't appear injured on video. At no time did Mr. Lulow offer testimony that these witness statements were important to the denial at all, that they were any basis for the decision of the denial. Mr. Lulow said he didn't appear injured on video. He wanted to see the Defendant keel over. He wanted to see him grab his back and fall down. And that wasn't the facts of the case. Did Mr. Lulow admit on cross-examination that a heat or burning sensation, such as the claim to have, would not likely be visible on surveillance video? He did admit that. He admitted that what the claimant was claiming to have experienced was not visible on video. He wanted to see more than that. He also admitted that he wasn't an expert in back injuries, so I'm not sure how he was even supposed to know what it was that he was supposedly looking for, as far as symptomology, not being a physician. The other investigation that was done was for Mr. Newman. Mr. Newman testified that the claim was denied because petitioned, because I'm getting the words confused, I'm sorry, because Defendant was not injured on the premises. But he offered nothing to say where Defendant was injured. His investigation, as he testified to it, also no mention of any interviews with anyone. Mr. Newman never interviewed anyone. The Defendant wasn't interviewed. Mr. McKillen wasn't interviewed. Mr. Newman's investigation consisted of watching an hour of video that we weren't provided with, the Condell acute care records, and the Form 45, the first report of injury. You watched this video, obviously, yourself at some point, correct? I only watched the six minutes that the court was provided with. Did the six minutes show any visible reaction to any pain symptoms on the part of the claimant at all? You don't really actually see the claimant much walking around. Most of the video clips, he's on the forklift, because the forklift was big enough and enough movement to activate these cameras. Most of the clips, you see the claimant come in on a forklift, the video goes blue, and you see him leave on a forklift. Okay, let me ask a question. I mean, you said there was an hour of video that the investigator observed, and was that hour supposed to be of what was going on in the warehouse or in this cooler? Yes, both Mr. McKillen, the coworker and defendant, testified that they came back to the warehouse shortly after 4 p.m., and it would have taken them approximately an hour to put all of these kegs away in this oddball cooler, and they had done various duties, and then we see the defendant leave at 5.09. The only video that we were provided with here is from 4.40 to 4.44, and then again around 5 o'clock when he leaves. Okay, but you said something about the investigator said he watched the hour video. He did. He said he reviewed more video. So my question is, was it just dark for most of the hour, what he saw? You don't know? I don't know. He said he reviewed an hour of video. He said he reviewed videotape from before what we saw, from when they returned until 4.40 he had seen video. He admitted he saw a defendant lifting barrels. I mean, that is very clear in the transcript. Mr. Newman admitted that. What does the video show kicking the door? Did you see that part? Honestly, I, we tried this case a long time ago. I don't really, what I recall is that it was like a swinging door. I didn't, I'm not under the impression that that was a rigorous activity that required so much force to force this door open. It was, you know, like one of those, like a, you know, easily swung open. It didn't seem to be that difficult to me. And it didn't seem to be something that just because I had a tightness and a warmth in my back that someone of defendant's stature would not have been able to do. The defendant in this case is a big guy. He's in good shape. He lifts 80 barrels a day that weigh 175 pounds. I mean, the guy is capable of doing a lot. You know, and I think what brings me to another point is that he was able to do this route all day. You know, plaintiff is trying to suggest that at some point this happened somewhere else, but there's no time frame for that to have happened. He ran his route. He lifted these 80 barrels this day. He calls his coworker, Mr. McKillian, 20 minutes after he leaves the warehouse that day. There's no other time for something else to occur. It's not like he went home, he went body building or weight lifting and had something happen there because there's no time for that. He immediately complains of this to his coworker who credibly testifies, but he called him 20 minutes on his way home. He hadn't even arrived home yet. So there's no other time frame for something else to have occurred. The plaintiff's evidence is void of substantial grounds to dispute the liability here. You know, it's not acting in good faith, I don't think, to demand proof beyond all certainty, beyond all reasonable doubt. The actions in requiring that kind of proof, we don't want to set a precedent where a claimant has to fall down on videotape in order to have an accident here. And requiring that is unreasonable and vexatious. I think it was especially unreasonable and vexatious when it comes to not paying for treatment that was already authorized. They sent him to the company clinic where they send work-related injuries, and it says on the slip to be treated for work-related injuries. They sent him to Condell and then didn't pay Condell's bill. They authorized him for an MRI, told him where to go get it, and then didn't pay for the MRI. They scheduled him for an independent medical examination, didn't tell him it was canceled. He still showed up there. You know, so saying that, you know, oh, they were so nice not to do an IME, they didn't delay the case. Well, they had one scheduled. He showed up for it. There wouldn't have been a delay in them getting a medical opinion to support the case there. We talked about the test for penalties being reasonable. Just because you do an investigation does not mean that your actions are reasonable when that investigation does not show any doubt. Okay? The video, the investigation, as it was testified to by Mr. Lulow and Mr. Newman, showed him lifting barrels. It showed him doing what he claimed to have been doing. Given this overwhelming evidence, I think the penalties were warranted in this case. This was a unanimous finding by the commission that reviewed this video and supplied additional reasons why they felt that, you know, penalties were justified in this case. So I would ask that the commission be affirmed in its entirety. Thank you. Thank you. You know, there's been a lot of talk about the closed caption surveillance. And, again, I want to stress to the panel today that that's not the sole reason why this matter has been denied. There was a full investigation performed. There were statements of other witnesses regarding what the petitioner told them and his actions after the alleged incident. The statements that were rejected include those from Kurt Hocher, who indicated that the petitioner told him it took him 30 minutes to walk to his car, he was in so much pain. From Mr. Lulow, who talked to Todd Varensky, who also said the petitioner told him, Todd Varensky, it took him 45 minutes to walk to his car, he was in so much pain. When you look at the totality of the information. That investigation report is not in the record, right, because it was refused. It's in the record. It was not accepted as an exhibit. And did you appeal the issue of it not being admitted? It was appealed only in the sense that it was part of my arguments in this case. I mean, you don't state it as an issue on appeal, do you? No, you're not. The court erred. Right. Well, how do we consider something that's not in the record? Well, it's in the record. It's still part of the record as far as what is in front of your honors as far as to be reviewed. It's not evidence. I'm sorry? It's not evidence. It was never admitted. It's in the record as exhibits number one and two. But it was not admitted. It was refused, and its refusal is not on appeal. Correct. It was still admitted into the record as far as something that can be looked at. How do we consider something that's not admitted? It's part of the record. Come on. Please. Whether it be judge, commission, or anybody else, you don't consider evidence that isn't admitted, things that aren't admitted into evidence. But even if you take those things out, you still have the other things that were looked at as far as what was decided regarding the reason why this matter was not accepted, regarding his testimony. And this is his testimony. He described his pain as severe and rated as a 6 or 7 out of 10. Where did he testify to that? It was on C-809. It was during arbitration, right? Your client didn't know that when he denied benefits. But we also had other information that's in the record that had his statement and his statements of how the accident took place. And that is part of the record as far as his own handwritten statements as far as what his pain complaints were. So my point is this, and we don't want to belabor this, but here's a company, a respondent, who didn't sit there and just say we're denying the case because we're denying the case. They had investigators speak with witnesses. They had the closed caption surveillance which showed information contrary to what the petitioner testified to or what he claims to have took place. They had statements from other people who were taken into totality as far as why this matter was denied. I don't know why none of those people said no accident happened. You just found contradictions in what the petitioner said and things like that. Correct. And just so we're clear, this is an unwitnessed accident. No one testified to that they saw this accident take place. Nobody said that the claimant told me he didn't really get hurt or anything like that. I mean, you found inconsistencies which the company felt were enough to deny the claim. Correct. Okay. No conclusive evidence. Right. And again, the standard that's being asked for us is to try to prove a negative. I mean, it's almost impossible to do that. It's your burden. Whose burden? It's not our burden. No, excuse me. On penalties, it is your burden. When you don't pay, it's your burden to show that failure to pay is objectively reasonable. Now, there's no argument about that. Right. That simple as that. You're burdened. The commission says you didn't prove it. Again, then why do we have appellate court that if the commission says it, then that's how it should be held? What I'm saying is the commission made a mistake here because there was totality of evidence that showed that there were other things that were considered other than the video that they seem to rely a whole lot on in their decision. And the fact that the arbitrator says we didn't have a medical opinion. Counsel, your time is up. Thank you. Thank you very much. Court is adjourned.